## STATE vs. CHARLES B. MORRIS.

1. GAMING—KEEPING "GAMING TABLE"—OFFENSE.

Under *Rev. Code* 1852, amended to 1893, *p.* 961 (11 *Del. Laws*, *c.* 454) § 1, providing that if any person shall keep or exhibit a gaming table at which any game of chance is played, or shall be concerned in interest in the keeping of such table, he shall be guilty of a misdemeanor, the word "keeping" is to be given its ordinary significance, and a "gaming table" to be understood as one used for gaming purposes; the purpose of the act being to prevent the keeping of devices suitable for gambling.

2. GAMING—KEEPING GAMING TABLE—ELEMENTS OF OFFENSE.

Where one keeps a gaming table on which games of chance are played, he is guilty of the offense of keeping a gaming table, denounced by *Rev. Code* 1852, amended to 1893, *p.* 961 (11 *Del. Laws*, *c.* 454) § 1, even though he be not financially interested in the game and does not derive a profit from keeping the table.

3. CRIMINAL LAW—EVIDENCE—PRESUMPTIONS.

An accused is presumed to be innocent until proven guilty beyond a reasonable doubt; the burden of proving guilt being on the state.

4. CRIMINAL LAW—TRIAL—EVIDENCE—SUFFICIENCY.

In a criminal prosecution, the jury should acquit if they have, after consideration of the evidence in a careful and conscientious way, a reasonable doubt as to accused's guilt.

(*January* 14, 1914.)

Judges CONRAD and WOOLLEY sitting.

*Armon D. Chaytor, Jr.*, Deputy Attorney General, for the state.

*J. Frank Ball* for the accused.

Court of General Sessions, New Castle County, January Term, 1914.

Charles B. Morris was indicted for exhibiting a gaming table. Verdict, guilty.

See *State v. Panaro, post,* 91 *Atl.* 1000.

The accused was tried on an indictment (No. 38, January Term, 1914) under *Chapter* 454, *Volume* 11, *Laws of Delaware* (*Revised Code* 1852, amended to 1893, *page* 961), containing four counts. The first count charged that Charles B. Morris, the accused, exhibited a gaming table on December 17, 1913. The second count charged that Morris was concerned in interest in

keeping and exhibiting a gaming table on said date. The third count charged him with keeping a gaming table from November 1 to December 20, 1913; and the fourth count charged said Morris with being concerned in interest in keeping and exhibiting a gaming table between the latter dates.

The state proved: That the defendant upon the dates mentioned in the indictment was conducting a cigar store at Fourth and Poplar Streets, in the City of Wilmington. That said business was conducted upon the first floor, from which there were steps leading to a basement which was fitted up with pool tables and also contained two smaller tables about four feet and four and one-half feet in diameter, respectively, covered with green cloth, with playing cards upon them, which basement and paraphernalia were in the possession and control of the accused. At various times on and about the said dates, games of poker, pitch, and pinochle were played with cards for money by various persons and upon the tables furnished by Morris and that the usual amount played for was five cents ante and twenty-five cents limit. That during the course of the games five cents would be taken out of the pot and laid aside and when a sufficient amount had accumulated the players would order cigars, cigarettes, chewing gum, or candy, from Morris or some one representing him, and the amount thus accumulated would be handed to Morris without counting it or without estimating the gross amount of the purchases. That at times the money would be spent for oysters or drinks not furnished by Morris. There was also evidence that at times Morris himself joined in the above mentioned games. There was no evidence, however, that Morris had any direct pecuniary interest in the games, or that he was what is technically known as a "backer". The accused offered no evidence upon his part.

### STATE'S PRAYERS.

1. That if the jury find that the accused kept or exhibited any table at which a game of cards was played for money, then they should find him guilty, as under the first clause of the first section of the act (*Chapter* 454, *Volume* 11, *Laws of Delaware*,

*Revised Code*, 961), the mere exhibiting or keeping of a gaming table is made the crime. *Toney v. State*, 61 *Ala.* 1; *Wren v. State*, 70 *Ala.* 1; *Bibb v. State*, 83 *Ala.* 84, 3 *South.* 711; *Id.*, 84 *Ala.* 13, 4 *South.* 275.

2. That it is not necessary for the state to show that the defendant had any pecuniary interest or expectation of gain in the keeping and exhibiting of a gaming table, to show a violation of the first clause of section one. See authorities above cited and *Commonwealth v. Colton*, 8 *Gray* (*Mass.*) 488.

3. That the fact that a table may at times have been used for other purposes than gaming would not deprive it of its character as a gaming table, if as a matter of fact it was kept and exhibited as a gaming table. *Jones v. Territory*, 5 *Okl.* 536, 49 *Pac.* 934, 935.

Counsel for the accused opposed the prayers as asked for by the state, and requested the court to charge the jury that, in order to convict, it is incumbent upon the state to prove beyond a reasonable doubt all the necessary elements or ingredients of the offense charged in the indictment.

That in order to convict, the jury must be satisfied beyond a reasonable doubt that the accused had a pecuniary interest in the keeping and exhibiting of a gaming table.

CONRAD, J., charging the jury:

Gentlemen of the jury:—Charles B. Morris, the accused, stands indicted before this court and is on trial before you under an act of the General Assembly, entitled "An act for the suppression of gaming," passed as long ago as 1857 (11 *Del. Laws, c.* 454), so that it is old enough to be good. It is the province of the court when called upon, to interpret and construe the law, and it is your province as members of the jury to take the law and to fit the facts into it and from that make up your verdict. This act provides:

"Section 1. That if any person or persons shall keep or exhibit a gaming table, faro bank, sweat cloth, roulet table, or other device under any denomination, at which cards, dice or any other game of chance is played

for money, or other thing of value, or shall be a partner or concerned in interest in the keeping or exhibiting such table, bank, sweat cloth, or other device, he, she or they shall be deemed guilty of a misdemeanor," etc. *Rev. Code*, 961.

It is that law that the counsel in this case have asked us to construe.

[1] The accused is charged under the first and third counts of this indictment with keeping or exhibiting a gaming table. In the opinion of the court a person keeping a gaming table is liable under the statute; and by keeping, the ordinary meaning of the word is applicable. The word keeping means to maintain, to control, to carry on, to manage. A gaming table is a table used for gaming purposes, a table upon which games of chance are played for a stake, and the evident idea in the minds of the legislators was that the keeping of a table to be used for gaming purposes and called a gaming table was an important and almost necessary adjunct in the matter of gambling, and that in prohibiting the keeping or exhibiting of a gaming table, the effect would be to lessen the offense of gambling.

[2] Under the first and third counts of the indictment in this case the accused is charged with exhibiting and keeping (on different dates) a gaming table. The offense so charged is fully sustained when the fact is proven to the satisfaction of the jury that the accused kept or exhibited a gaming table, and the matter of the accused being concerned in interest in, or deriving a profit from it, is not an element in the charge. The keeping and exhibiting are the only things that need be shown under these two counts. That disposes of the first and third counts.

In the second and fourth counts the accused is charged with keeping and exhibiting a gaming table in which he was concerned, or in which he had an interest. The court feel constrained to say that under the evidence adduced in this case in its opinion the charge made in the second and fourth counts of the indictment that the accused was concerned in interest in the keeping or exhibiting of a gaming table has not been sustained, and the charges made in those two counts are withdrawn from your consideration; so that the question left for your determination

is, whether or not the accused kept or exhibited a gaming table, as defined. You are to weigh, gentlemen of the jury, and consider the evidence as you have heard it from the stand. If the state has proven to your satisfaction that the accused kept or exhibited a gaming table, that it was under his control or management, then the offense charged has been sustained, and your verdict should be guilty, regardless of the fact that no profits were shown to have been proved as received by the accused from the table.

[3, 4] We also charge you, gentlemen of the jury, that the accused is presumed to be innocent until he is proven guilty beyond a reasonable doubt, and the burden is upon the state to prove its case, so that if after consideration in a careful conscientious way, as reasonable, fair-minded men, you have a reasonable doubt as to the guilt of the accused, then you should find him not guilty. The matter is left with you.

Verdict, guilty.